**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| K.A., a minor, by and through her next friend, Michael Ayers,<br><br>       Plaintiff,<br><br>              v.<br><br>POCONO MOUNTAIN SCHOOL DISTRICT,<br><br>       Defendant. | No. 3:11-CV-417<br><br>(JUDGE CAPUTO) |

### MEMORANDUM

Plaintiff K.A.'s moves for preliminary injunction to prohibit defendant Pocono Mountain School District from preventing her from distributing flyers promoting religious events. Last December, K.A. was told she was not allowed to distribute an invitation to a Christmas party at a local church. Pocono Mountain argues its decision was solely based on the flyer's being a solicitation for an event run by an organization the school was unfamiliar with, rather than the flyer's promotion of a religious holiday. Pocono Mountain claims that, under a First Amendment nonpublic forum analysis, it was well within its rights in prohibiting the flyer's distribution. Additionally, the school district claims that its actions were based on safety concerns, satisfying the *Tinker* test. The school district further argues that, even if the operative policies did not pass constitutional muster, the issue is moot since it has subsequently amended them. K.A. argues the relevant framework for analyzing the school district's policies is not a forum-analysis, but rather *Tinker*. K.A. claims both Pocono Mountain's original and revised regulations on student speech fail the *Tinker* test. The Court agrees with K.A. and will grant the preliminary injunction.

**BACKGROUND**

A Hearing was held on the Motion for Preliminary Injunction and the following facts were developed.

K.A., a minor, is a student at Barrett Elementary Center and a resident of Cresco, Pennsylvania. At the time relevant to the complaint, she was in fifth grade. K.A. is a Christian. Barrett Elementary Center is operated by Pocono Mountain School District. Students at Barett are ordinarily allowed to pass out birthday invitations and the like during non-instructional time or through "mailboxes" assigned to the students by the school. Local community groups and organizations also distribute materials through the mailbox system. In December 2010, K.A. wished to hand out flyers inviting her classmates to a Christmas party at her church. The flyer contained the following information:

> iKidz Rock Night
>
> Christmas Party
>
> Just for Kids!
>
> Grades K-6
>
> Friday, December 10
>
> 6:45 - 8:30 p.m.
>
> Face Painting, Ping Pong, Foosball, Cup-Stacking, Games, Prizes, Puppets, Music, Snacks, and more!
>
> Admission and all activities are free!
>
> BRING A FRIEND!

When her teacher saw the flyer, she told K.A. that Principal Heidi Donohue had to approve it before K.A. could distribute it. After K.A. submitted the flyer, her father, Michael Ayers,

2

contacted Principal Donohue to see if the flyer was approved. Principal Donohue told Mr. Ayers that non-school related flyers had to be approved by the Superintendent and that the Superintendent had not approved K.A.'s flyer. When Mr. Ayers asked Principal Donohue for a written explanation for the denial, Principal Donohue pointed him to District Policy 913. After Mr. Ayers sought further clarification, Superintendent Dwight Pfenning emailed him and told Mr. Ayers that Policy 913 provided him with the authority to prohibit the distribution of K.A.'s flyer.

> The version of Policy 913 in effect in December 2010 stated, in pertinent part, that:
>
> Any requests from civic organizations or special interest groups which involve such activities as patriotic functions, contests, exhibits, sales of products to or by students, sending promotional materials home with students, graduation prizes or fund raising must be examined to insure that such activities promote student interests primarily, rather than the special interests of any particular group.
> No individual, firm or corporation shall be permitted to engage in commercial advertising, promotion, solicitation or sales with regard to the student body, faculty, staff or the public on school district property or at any school sponsored activities unless the same shall have been previously approved in writing by the District.

K.A.'s father filed suit on K.A.'s behalf in March 2011, claiming the school district's actions violated K.A.'s First and Fourteenth Amendment rights. A preliminary injunction was then filed in July 2011. In her motion for preliminary injunction, K.A. states that she wishes to pass out religious flyers and materials in the future and she requests that the Court prohibit the school district from preventing her from doing so. In August, the school district revised Policy 913. The revised version of Policy 913 states, in pertinent part, that:

> The Board prohibits the use of students and staff members for soliciting, advertising, or promoting nonschool events, organizations, groups, or individuals during the school day or at school-sponsored locations or events not otherwise open to nonschool organizations, groups, or individuals.

3

> During the school day, only literature and materials directly related to school district activities or that contribute significantly to district instructional programs may be disseminated to or through students and staff members. Prohibited materials may never be distributed or used at any time.
>
> A review of any nonschool written materials under his policy will not discriminate on the basis of content or viewpoint, except that prohibited materials will be rejected, as will any materials that do not comply with Board policy, administrative procedures, or written announcements relating to the proposed nonschool-sponsored materials.
>
> Appropriate literature and materials relevant to nonschool organizations, groups or individuals may be disseminated by school sponsored organizations involved in such activities as fundraising and community service, contingent upon approval by the Superintendent and/or designee.

The preliminary motion has been briefed, oral argument has been held, and the motion is ripe for review.

## DISCUSSION

In order to grant a motion for a preliminary injunction, a district court must address the following four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *See Forum for Academic and Institutional Rights v. Rumsfeld*, 390 F.3d 219, 228 (3d Cir. 2004).

The key factor in this case is (1). Pocono Mountain argues that K.A. will not be successful on the merits because: (a) her speech was not personal; (b) Policy 913 comports with the First Amendment under a nonpublic forum analysis; (c) the school district's actions also pass the *Tinker* test since the school acted out of concerns for safety and to avoid classroom disruptions; and (d) the suit is moot since the revised Policy 913 removes any

ambiguities in the school district's policy on the distribution of non-school related materials.

### 1. Success on the Merits

K.A. is likely to succeed on the merits of her First Amendment claim against Pocono Mountain because both the original and revised versions of Policy 913 fail the *Tinker* test.

Although Pocono Mountain argues that a forum analysis is the proper standard by which to judge its actions in this case, rather than *Tinker*, the Court does not agree. Since the Court finds that this case is primarily about the expressive speech of a student, it will apply *Tinker*.

In the context of speech at school, forum analysis is typically employed when the school has provided outside groups with access to the school. *See, e.g., Gregorie v. Centennial School Dist.*, 907 F.2d 1366 (3d Cir. 1990) (evangelical group denied permission to rent auditorium at high school that had previously rented it to other outside organziations).

The "traditional public forum" has been defined in terms of places such as streets or parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496 (1939).

A "designated open public forum" is created when public property is intentionally opened by the state for indiscriminate use by the public as a place for expressive activity. A state is not required to maintain the open character of the facility indefinitely. *Perry Educ. Assn. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

The third forum category recognized in the first amendment context is the "non-public

forum." This forum exists when publicly-owned facilities have been dedicated to use for either communicative or non-communicative purposes but have never been designated for indiscriminate expressive activity by the general public. *U.S. Postal Serv. v. Council of Greenburgh*, 453 U.S. 114 (1981). Content-based regulation in this category is examined under the "reasonable nexus" standard. "Control over access to a non-public forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 806 (1985).

However, in cases dealing with *student* speech in public schools, the framework for analyzing the First Amendment issues is provided by four cases: 1) *Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503 (1969); 2) *Bethel School District No. 403 v. Fraser*, 478 U.S. 675 (1986); 3) *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), and 4) *Morse v. Frederick*, 551 U.S. 393 (2007). In *Tinker*, students protested the Vietnam War by wearing black armbands to school. The school prohibited the wearing of armbands, and the students were suspended. In finding that the school's actions were impermissible, the Court announced: "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." 393 U.S. at 506. The Court identified a test for when schools can control student speech: "conduct by the student, in class or out of it, which for any reason-whether it stems from time, place, or type of behavior-materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Id.* at 513. Tinker "requires a specific and significant fear of disruption,

6

not just some remote apprehension of disturbance." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 211 (3d Cir.2001).

Subsequent cases have carved out student speech that can be controlled without a showing of substantial disruption or interference. *Fraser* holds that a school may categorically prohibit lewd, vulgar or profane language. 478 U.S. at 485. *Hazelwood* holds that a school may regulate school-sponsored speech (that is, speech that a reasonable observer would view as the school's own speech) on the basis of any legitimate pedagogical concern. 484 U.S. at 462. *Id. Morse* holds that a school may restrict student speech at a school event when that speech is reasonably viewed as promoting illegal drug use. 551 U.S. at 403. Speech falling outside of the above categories "is subject to Tinker 's general rule: it may be regulated only if it would substantially disrupt school operations or interfere with the rights of others." *Saxe*, 240 F.3d at 214. In other words, if student speech is not lewd, school-sponsored, or advocating drug use, the speech can only be prohibited if it is likely to cause a disruption. *C.H. v. Bridgeton Bd. of Educ.*, No. 09-5815, 2010 WL 1644612, *6 (D.N.J. Apr. 22, 2010).

Lastly, a "students' expression is 'personal' if it is voluntary and not dictated by an individual or group." *Slotterback v. Interboro Sch. Dist.*, 766 F.Supp. 280, 290 n. 9 (E.D.Pa. 1991) (internal citations omitted).

Pocono Mountain claims the flyer in question was not personal speech, but rather a solicitation from a third-party organization, and therefore *Tinker* should not apply. While the Court acknowledges that the speech in question is something of a hybrid of commercial and personal speech, the Court, erring on the side of caution, finds that *Tinker* is the

7

appropriate framework. K.A., an observant Christian, wished to invite her classmates to a religious-themed event, i.e. a Christmas party, at her church in an effort to share her faith with them. The invitation therefore could reasonably be viewed as an attempt to proselytize her personal religious beliefs.

Moving to the framework provided by *Tinker* and its progeny, it is clear that none of the post-*Tinker* "carve-outs" apply. The question then is whether the school can articulate a specific and significant fear of disruption if K.A. was allowed to pass out her flyers. The Court finds that it cannot. The school has cited general safety concerns in allowing children to pass out flyers for events the school is unfamiliar with. The school argues that since it did not know the relevant details regarding the Christmas party: who was running it, the food that would be served, who would be supervising, etc., it did not want to send home a flyer that might mislead parents into believing it was a school-sanctioned event. However, the Superintendent does not appear to have taken any steps to acquaint himself with the church or find out additional information. Additionally, the Superintendent testified that students frequently bring home invitations to student birthday parties, as well as solicitations and other material from outside organizations. Parents were therefore on notice that much of the material that came home was for non-school sponsored events.

The school district also argues that allowing any type of third-party solicitation to be passed out would disrupt the learning environment. While the Court understands this concern, we are again dealing here with a somewhat unusual case – straddling both personal expression and solicitation – and nothing in the Court's holding should be read as requiring the school district to open its doors to any and every type of solicitation from outside parties. Since Pocono Mountain appears only to be able to demonstrate vague


concerns over possible disruption, its actions will likely have failed the *Tinker* test.

Even assuming a nonpublic forum analysis was appropriate, the school district's actions were likely too broad and arbitrary to stand up to constitutional challenge. The school district, as a nonpublic forum, would be entitled to put time, place, and manner restrictions on speech made on the school grounds so long as the restrictions were viewpoint neutral and reasonable in light of the school's interest in the effectiveness of the forum's intended purpose. *U.S. v. Kokinda*, 497 U.S. 720, 730 (1990). However, even putting aside the neutrality issue – relevant here given the fact that materials for activities hosted by third-parties frequently went home with students – the Superintendent's elusive criteria for determining which materials could be distributed is simply too broad and vague to be considered reasonable. The Superintendent's "unfamiliarity" with a given organization – without any procedure for establishing "familiarity" – is a criteria ripe for abuse.

Additionally, the revised version of Policy 913 does not solve the problem. An across the board ban on any type of "solicitation," given the established vagaries of that term, clearly runs afoul of both *Tinker* and a nonpublic forum analysis. Under *Tinker*, the school district cannot use the a generalized safety concern over solicitations to ban all materials which may contain personal\expressive components. Such an absolute ban, which is the solution arrived at in the revised Policy 913, is unreasonable under a nonpublic forum analysis as well.

## CONCLUSION

The Court will grant K.A.'s motion for preliminary injunction because Pocono Mountain's original and revised Policy 913 runs afoul of the protections for the personal

speech of students provided by the First Amendment and articulated in *Tinker*.

An appropriate order follows.

| | |
|---|---|
| 10/20/11 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

K.A., a minor, by and through her next friend, Michael Ayers,

 Plaintiff,

   v.

POCONO MOUNTAIN SCHOOL DISTRICT,

 Defendant.

No. 3:11-CV-417

(JUDGE CAPUTO)

## ORDER

**NOW**, this __20th__ day of October, 2011, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Preliminary Injunction is **GRANTED**;

2. Plaintiff K.A. is permitted to distribute religious flyers to her friends and classmates during non-instructional time at Barrett Elementary Center;

3. Plaintiff K.A. is further permitted to distribute religious flyers through the take home folders and the literature distribution table at Barrett Elementary Center;

4. Defendant is prohibited from enforcing 913 as applied to prohibit Plaintiff from distributing literature promoting religious events and activities; and

5. Plaintiff shall not be required to give security pursuant to Fed. R. Civ. P. 65(d).

          /s/ A. Richard Caputo
          A. Richard Caputo
          United States District Judge